**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel., ADVANCED CUSTOM COATINGS, LLC | ) ) ) ) |
| **PLAINTIFF,** | ) ) |
| v. | ) ) |
| LIBERTY MUTUAL INSURANCE COMPANY     SERVE: Corporation Service Company          84 State St.          Boston, MA 02109 | ) ) ) ) ) ) **CASE NO. _____** |
| **AND** | ) ) |
| STAMPEDE VENTURES, INC.     SERVE: BERING STRAITS          NATIVE CORPORATION          110 FRONT ST STE 300,          NOME, AK 99762 | ) ) ) ) ) ) ) ) |
| **AND** | ) ) |
| BELLE GENERAL CONTRACTING, INC.     SERVE: MICHELLE LEIGH MICHELS          504 Giles Dr,          Chesapeake, VA, 23322 | ) ) ) ) ) ) |
| **DEFENDANTS.** | ) |

**COMPLAINT**

COMES NOW the Plaintiff, the United States of America for the use and benefit of

Advanced Custom Coatings, LLC ("ACC" or "Plaintiff"), by counsel and for its Complaint

against Defendants Liberty Mutual Insurance Company ("Liberty Mutual"), Stampede Ventures, Inc. ("Stampede" or "Prime Contractor"), and Belle General Contracting, Inc. ("Belle") and states as follows:

## NATURE OF THIS ACTION

1.      This action concerns the breach of contract for nonpayment of labor and materials provided in connection with Prime Contract No. N4008523D0038, Task Order N4008524F4235 (the "Prime Contract") issued by the U.S. Department of the Navy for the SP-90 Renovate Reservoir Structure & Replace Booster Pump Station at Naval Station Norfolk, Norfolk, VA procurement (the "Project").

2.      This action further concerns delays and increased costs incurred by the Plaintiff due to differing site conditions, defective specifications, failure to cooperate, and bad faith by the Defendants in the performance of the Prime Contract and associated subcontracts.

## PARTIES

3.      Plaintiff ACC is a limited liability company existing under the laws of the State of North Carolina.  ACC's headquarter office is located at 1222 Salem Church Road, Elizabeth City, North Carolina 27909.

4.      The Defendant Liberty Mutual is an insurance company existing under the laws of the State of Massachusetts.  Liberty Mutual's headquarter office is located at 175 Berkley Street, Boston, Massachusetts 02116.

5.      The Defendant Stampede is a corporation existing under the laws of the State of Alaska.  Stampede's headquarter office is at 3301 C Street, Suite 400, Anchorage, Alaska 99503.

6.      The Defendant Belle is a corporation existing under the laws of the Commonwealth of Virginia.  Belle's headquarter office is located at 504 Giles Drive, Chesapeake, Virginia 23322.

**JURISDICTION; VENUE**

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, and 1352 as (i) certain claims under this action arise under the Miller Act, 40 U.S.C. §§ 3131-3134; (ii) there is an actual, and justiciable controversy between the parties with complete diversity of citizenship and the amount in controversy exceeds $75,000.00; and (iii) a bond for the Prime Contract was executed under federal law.

8. In addition, this Court has jurisdiction over the breach of contract, quantum meruit, and breach of good faith and fair dealing claims of Plaintiff against Defendants under its supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, as the claims formed as part of the same case or controversy as the Miller Act claim and other claims giving rise to this Court's original jurisdiction.

9. Venue is proper in this district pursuant to 40 U.S.C. § 3133(b)(3)(B) and 28 U.S.C. § 1391(b)(2) because the contracts giving rise to this dispute were performed in this district.

**STATEMENT OF FACTS**

10. The U.S. Government, acting through the U.S. Department of the Navy ("Navy" or the "Government") issued the Prime Contract to Stampede on or about November 22, 2023.

11. The Prime Contract sought to renovate the reservoir structure and replace the booster pump station for Building SP-90 on Naval Station Norfolk.

12. As stated regarding the Project in the Navy's solicitation underlying the Prime Contract –

> The SP-90 reservoir stores potable water and provides the primary pressure boosting capacity for the firefighting operations on base. Based on the 2021 EXWC inspection photographs, the water tank reservoir and its adjacent facilities (pumping station, backflow preventer building, and transformer room) are in need of repair.

3

13.     The Prime Contract included various specifications and drawings pertinent to the work required for the Project.

14.     The work required by the Prime Contract included, among other things, applying a polyurea tank liner to the water tank reservoir for Building SP-90.

15.     On November 29, 2023, Stampede obtained a Miller Act payment bond from Liberty Mutual for the protection of all persons supplying labor and material in carrying out the work provided for in the Prime Contract as required by 40 U.S.C. § 3131(b)(2) (the "Payment Bond").  The Payment Bond was issued in the amount of $5,800,406.  A copy of the Payment Bond is attached hereto and incorporated herein as **Exhibit 1**.

16.     On January 29, 2024, Stampede subcontracted to Belle a portion of the work required by the Prime Contract ("Stampede Subcontract") for a total subcontract price of $1,745,870.

17.     The work subcontracted to Belle included "ITEM 0001 – SP-90 Tank – Spall Repair" and "ITEM 0002 – SP-90 Polyurea Tank Liner."

18.     The Stampede Subcontract required Belle to obtain a payment bond for the full amount of the Stampede Subcontract price.

19.     Based upon information and belief, Belle did not obtain the payment bond required by the Belle Subcontract, nor did Stampede enforce the payment bond requirement of the Belle Subcontract.

20.     On March 5, 2024, Belle issued a 2nd tier subcontract to ACC for a substantial portion of Belle's work under the Stampede Subcontract ("ACC Subcontract") for a total of $1,155,600.

21.     ArmorThane USA, Inc. ("ArmorThane") is a chemical manufacturing company that manufactures the types of coating materials required for the Project.  ACC obtained the chemical coating sprays needed for the work required by the ACC Subcontract from ArmorThane.

22.     ACC is a certified applicator for the ArmorThane materials pertinent to the Project.

23.     At the beginning of ACC's performance in May of 2024, it became apparent that three to four feet of water and sludge were present in the tanks, instead of the three to four inches listed in the specifications.

24.     Throughout ACC's performance there was excessive moisture at the work site that impacted ACC's work.  ACC repeatedly proposed solutions to address the moisture issue; however, Stampede and Belle unreasonably denied the solutions proposed by ACC to remove the moisture.

25.     At the beginning of ACC's performance in May of 2024, the Navy approved the religious clothing (e.g., skirts and dresses) worn by certain of ACC's workers due to their religious beliefs.  However, Stampede and Belle, without valid justification or religious accommodation, refused to permit the ACC personnel to work on the Project due to the religious clothing.

26.     Throughout ACC's performance, Stampede and Belle interfered, delayed, modified, and increased the cost of ACC's performance, including without limitation, prohibiting ACC personnel from performing work, denying or delaying ACC personnel access to the job site, requiring additional equipment and work, delaying approvals and inspections, changing the order of operations for ACC's work contrary to industry standards, failing to timely provide information, failing to perform prerequisite Stampede or Belle work necessary for ACC's performance, turning off electricity necessary to keep ArmorThane chemical materials heated, requiring personnel from ArmorThane to inspect and approve of the substrate and to inspect the liner mock-up after

installation, and providing a job site that was materially different from the contract documents or the parties' expectations/understanding.

27.    At all pertinent times, ACC has been ready, willing, and able to perform the work and supply the materials required of it under the ACC Subcontract.

28.    During ACC's performance of the ACC Subcontract, Stampede personnel oversaw and directed ACC's work on a daily basis.

29.    By letter dated April 24, 2025, Stampede terminated for convenience the Belle Subcontract.

30.    Although the ACC Subcontract does not include a termination for convenience provision, Belle purported to terminate the ACC Subcontract for convenience due to the Belle Subcontract being terminated for convenience.

31.    The last day of ACC performing labor on the project was on or about March 29, 2025.

32.    Based upon information and belief, Stampede engaged a new subcontractor to finish the work required by the Belle Subcontract and ACC Subcontract, and the new subcontractor utilized the solutions proposed by ACC to address the work sites moisture issues.

33.    After termination of the ACC Subcontract, Stampede and Belle retained various equipment brought to the job site by ACC, including without limitation, scaffolding, lights, and extension cords ("Retained Equipment").  Stampede and Belle refused ACC access to the job site to retrieve the equipment and failed to promptly return the equipment.  Eventually, the scaffolding was returned to ACC after approximately a month post termination.  The other equipment has not been returned to ACC.  Based upon information and belief, the equipment was utilized in continued performance of the work by Stampede

34.     By letter dated May 14, 2025, ACC provided Stampede and Belle with notice of its Miller Act claim.

35.     On or about June 10, 2025, ACC provided its Miller Act Notice of Claim to Liberty Mutual.

36.     By letter dated December 5, 2025, Liberty Mutual denied ACC's claim against the Payment Bond.  A copy of the denial letter is attached hereto and incorporated herein as **Exhibit 2**.

37.     One year has not elapsed from the date on which ACC last performed work on the Project for which payment is sought, and although due demand has been made on the Defendants, no amount of the demand has been paid to ACC.

38.     ACC is owed in excess of Seven Hundred Eighty Thousand Dollars ($780,000.00) based upon ACC's contractual rights and the labor and materials provided by ACC, including without limitation, the delays and increased costs due to the acts of Stampede and Belle.

**COUNT I**
***MILLER ACT CLAIM***
**(Stampede and Liberty Mutual)**

39.     ACC incorporates by reference the above stated paragraphs as if fully set forth herein.

40.     Liberty Mutual issued the payment bond securing all sums due from Stampede up to the bond limit of $5,800,406.

41.     ACC has not been paid in full within 90 days after the day on which it did or performed the last of the labor or furnished or supplied the material for which the claim is made.

42.     Within 90 days from the date on which ACC did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made, ACC served written notice of its claim on Stampede, stating with substantial accuracy the amount claimed and the

7

name of Belle as the party to whom the material was furnished or supplied or for whom the labor was done or performed, and all parties to whom such notice was given actually received such notice.

43. This action is filed within one year of the date on which ACC last performed work on the Project, and ACC has satisfied all conditions precedent to payment under the Payment Bond.

44. Liberty Mutual, as the surety, is obligated to pay ACC under the Payment Bond for the labor and materials it furnished for Stampede and Belle on the Project, and is liable for all unpaid amounts due to ACC for which the Payment Bond is applicable.

45. Despite demands for payment, Liberty Mutual and Stampede have failed to make such payment to ACC and have failed to fulfill their obligations under the Payment Bond.

46. ACC is entitled to payment pursuant to the Miller Act, 40 U.S.C. § 3133.

WHEREFORE, Plaintiff, United States of America for the use and benefit of ACC, demand judgment against the Defendants, Liberty Mutual and Stampede, jointly and severally, in an amount in excess of Six Hundred Thousand Dollars ($600,000.00), the exact amount to be established at trial, along with pre-judgment and post-judgment interest, attorney's fees, costs, and other damages, and further prays for such other relief as this Court deems just and appropriate.

## COUNT II
### *UNJUST ENRICHMENT*
#### (STAMPEDE AND BELLE)

47. ACC incorporates by reference the above stated paragraphs as if fully set forth herein.

48. Defendants Stampede and Belle requested and directed ACC to provide and furnish the aforesaid materials and labor to benefit Stampede and Belle. In doing so, ACC conferred benefits on Stampede and Belle for which Stampede and Belle have failed to pay ACC.

49.     Defendants Stampede and Belle were aware and had knowledge of the benefits conferred upon them by ACC and wrongfully secured said benefits or have passively received those benefits that would be unconscionable to retain.

50.     Defendants Stampede and Belle's acceptance and retention of the benefits without payment, and under the circumstances, amount to a windfall and make it inequitable for them to retain the benefits without payment for their value to ACC.

WHEREFORE, Plaintiff, United States of America for the use and benefit of ACC, demands judgment against Defendants Stampede and Belle, jointly and severally, in an amount in excess of Six Hundred Thousand Dollars ($600,000.00), the exact amount to be established at trial, along with pre-judgment and post-judgment interest, attorney's fees, costs, and other damages, and further prays for such other relief as this Court deems just and appropriate.

## COUNT III
### *QUANTUM MERUIT*
### (STAMPEDE AND BELLE)

51.     ACC incorporates by reference the above stated paragraphs as if fully set forth herein.

52.     ACC provided valuable materials to Stampede and Belle for certain work to be performed under the Prime Contract and the subcontracts with the intention of being paid for those materials and labor.  Stampede and Belle accepted those materials and labor, received the benefit of such materials and labor, and knew that ACC expected to be promptly and timely paid for its provision of materials and labor.

53.     All of the aforementioned materials provided by ACC to Stampede and Belle were rendered under such circumstances that Stampede and Belle knew that ACC expected to be paid.

WHEREFORE, Plaintiff, United States of America for the use and benefit of ACC, demands judgment against Defendants Stampede and Belle, jointly and severally, in an amount in

excess of Six Hundred Thousand Dollars ($600,000.00), the exact amount to be established at trial, along with pre-judgment and post-judgment interest, attorney's fees, costs, and other damages, and further prays for such other relief as this Court deems just and appropriate.

**COUNT IV**
***BREACH OF CONTRACT***
**(BELLE)**

54.     ACC incorporates by reference the above stated paragraphs as if fully set forth herein.

55.     A valid subcontract exists between ACC and Belle.

56.     Belle breached the ACC Subcontract when Belle terminated the subcontract for convenience, despite the ACC Subcontract not providing such right to Belle.

57.     Belle further breached the ACC Subcontract by failing to pay ACC for the materials and labor provided by ACC under the ACC Subcontract.

WHEREFORE, Plaintiff, United States of America for the use and benefit of ACC, demands judgment against Defendant Belle in an amount in excess of Seven Hundred Eighty Thousand Dollars ($780,000.00), the exact amount to be established at trial, along with pre-judgment and post-judgment interest, attorney's fees, costs, and other damages, and further prays for such other relief as this Court deems just and appropriate.

Respectfully submitted,

**UNITED STATES OF AMERICA F/U/B/O**
**ADVANCED CUSTOM COATINGS, LLC**

By Counsel

Ian A. Cronogue, VA Bar No. 83783
**Baker, Cronogue, Tolle & Werfel, LLP**
1320 Old Chain Bridge Road, Suite 410
McLean, Virginia 22101
703.448.1810, Ext. 22 (telephone)
703-448-3336 (facsimile)
iancronogue@bctwlaw.com

11